Good morning. Is it Mr. Greco or Greco? Greco. Welcome you. Good morning, Your Honor. May it please the court, counsel, and clerk. My name is Michael Greco. I represent the plaintiff appellant Paula Emerson. And as Your Honors know, this is a case appealing the dismissal of a case for Illinois Workers' Compensation Act retaliation. The critical issues in this case that we submit merit reversal are the treatment of the five-year pendency of the workers' compensation claim, which was pending at the time of Ms. Emerson's dismissal in 2019, as an isolated event that is encapsulated in the year 2014. Of course, treating it in that restrictive fashion as if it began and ended in 2014 would make Ms. Emerson's firing in 2019 appear to be remote by any measure. Certainly the case law is pretty uniform as far as time periods of that scope. In this case, however, the case was pending during that entire time period. It's a significant wrinkle with that circumstances that Officer Emerson, Ms. Emerson, was on leave from her employment by Sheriff Dart during the entirety of the period of the pendency of the workers' compensation claim from 2014 to her firing in 2019. And even before that, for about a year and a half when she was on paid medical leave due to a psychological distress event from September of 2012. So there was no interaction between the plaintiff, Officer Emerson, and Sheriff Dart from 2014 until her firing in 2019, accepting the leave. And she had to recertify periodically to continue even on unpaid leave. And the workers' compensation case. We did aver in the amended complaint that the same lawyers represent Sheriff Dart in all the cases he has in the courts. The Cook County State's Attorney's Office represented the Sheriff and the Cook County Sheriff's Office's Sheriff Dart's agency in defending the workers' compensation case. Can you help me to understand that allegation a bit? Yes. I understood it with regard to the Title VII suit. The idea that the State's Attorney's Office would be representing the Sheriff in defending against the unrelated Title VII lawsuit. And so, therefore, the folks on the ground in the Sheriff's Office would know about her litigation history. Can you help me to understand the plausibility of it with the workers' compensation claim? The idea that the Cook County State's Attorney's Office would be talking to the supervisors and decision makers at the Sheriff's Office about her workers' compensation claim. Are those claims adjudicated or processed through the Cook County Sheriff's Attorney's Office, State's Attorney's Office?  I personally have never been an assistant State's Attorney or a State's Attorney. But I know from experience that I believe it's the Labor and Employment Division of the Civil Bureau of the State's Attorney's Office represents the Sheriff Dart and the Sheriff's Office on all of their civil litigation, I believe, unless it's privately filed. In workers' compensation claims? In workers' compensation. There's no separate agency, county agency, that processes workers' compensation claims? There is not, at least not that was utilized in this case. And I've had other cases with the Sheriff's Office. It's always, in my experience, it's always been the Civil Bureau of the State's Attorney's Office that represents Sheriff Dart and the Sheriff's Office before the Workers' Compensation Commission. They might have specialties within that office where certain attorneys do more workers' compensation, certain attorneys do more excessive force. And let me ask you another question. Yes, Judge. So Ms. Emerson, Officer Emerson is sitting at home and she gets this termination letter in 2019. Surely there's a name on the termination letter. Why doesn't she put that in the complaint and go from there? Judge, she just had no knowledge of what that individual person would know besides being the name that's on the letter. That we submitted. The second argument that I have is that there was error in denying pretrials. But she doesn't even name that person as a defendant unless the only name on the letter, termination notice, she got is Tom Dart. I actually don't recall who precisely signed the letter at this moment. But we would still need to establish that that individual, if it was not Tom Dart, would have been familiar with. So I'm asking why didn't she sue that individual as well? We did not have... Because one of the district court's complaints is you don't really know where you're even going to start about who made the decision to fire you. But she's got a lead there. The lead is on the termination notice. She's got a lead. We needed the pre-motion discovery in order to establish that the person who signed the letter firing Officer Emerson was familiar or conversant with the fact that she had a Workers' Compensation Act claim pending. We submit that there is every reasonable inference to believe that there would be that awareness, again, because there's nothing... What is that reasonable inference? What makes it just more than possible? Because there was no other interaction between Officer Emerson and the Sheriff's Office other than the Workers' Compensation Act claim and the leave, the unpaid medical leave that she was on. Mr. Greco, then, do you have a theory as to why, if, in fact, it was a Workers' Compensation claim that motivated the termination, why the Sheriff's Office waited five years before terminating her? It was not... I don't have a theory other than the fact that they may have been frustrated that they were not able to settle the Workers' Compensation claim. They might have just wanted her off the books, which I submit would be improper if she's on unpaid medical leave. But there was no... I don't have a theory beyond that. It's the scarcity of any interaction between the Sheriff's Office and Sheriff Dart and the plaintiff, apart from the Workers' Compensation Act claim and the medical leave that I submit affords a plausible inference that the person who...the decision-makers who decided to fire her in 2019 would have been aware of the Workers' Compensation case and of the fact that it was pending for some five years. If you look at the cases that the district court cited, most of them did involve fairly isolated episodes in Workers' Compensation. The district court cited a state court case, the Fox versus Adams, and that was a case where ten and a half months elapsed between the employee plaintiff's return to work after Workers' Compensation and the firing. So in that case, of course, the appellate court found that there was no causal connection based on the temporal remoteness. Similarly, in Strong versus Quest Diagnostics, that I believe is a district court case. It may be some circuit case. Three and a half years elapsed from the denial of Workers' Compensation to the firing. All of these cases really that have been cited have fairly short terms in the Workers' Compensation process, and that makes it much more obvious or clearer for the district court and the appellate court to find the temporal remoteness. But with the case pending in this case, I submit that there is at least some inference of the possibility or plausibility of retaliation based on the firing to justify pre-motion discovery. And as the court has noted, it's a district court, and this court has noted the district court does have broad discretion in regulating discovery. We submit that it was error to prevent any type of discovery pre-motion on the basis of the failure to name the individual defendant specifically in this case. So I don't believe that this case is analogous to the Macaulay v. City of Chicago case. That was a case, a Monell case, as attempted by Mr. Macaulay. He also tried to obtain pre-motion discovery from the director of the Illinois Department of Corrections. There was no basis for him to infer that the director himself had an animus. I see my time is up. Thank you. Ms. Harvey. May it please the court, my name is Colleen Harvey, and I'm representing defendants in this case. The district court's order dismissing Emerson's complaint under Rule 12b-6 should be affirmed. In order to survive dismissal of her workers' compensation retaliation claim, Emerson had to plausibly allege that her discharge was causally connected to the exercise of her workers' compensation claim. Well, let me ask you about that. Why isn't it plausible that the sheriff's office got sick of its, quote-unquote, dead weight? You know, that an employee has been out on disability seven years, and, you know, litigious dead weight at that. She had the temerity to file a Title VII suit as well that had to be appealed. And now, you know, the workers' compensation claim is going into its fifth year, and so the sheriff's office just lets her go. Why isn't that not a reasonable inference based on the allegations in the complaint, particularly given that there was no interaction with her in those seven years, except for the fact that her workers' compensation claim is pending? And, you know, of course, the fact that she filed a Title VII lawsuit. If we have cases, and we do, and Illinois has cases that the pendency of a claim is a protected action under the Illinois Workers' Compensation Act, not just the mere filing, but the pendency, the continued pursuit of the claim, doesn't that mean the retaliation claim is viable based on the complaint? Defendants submit that it does not. Emerson has admitted that the only alleged facts are that she filed a workers' compensation case in 2014 and then was terminated in 2019, which is not enough. She is alleging that, you know, that the workers' compensation—the fact that the workers' compensation claim was still pending in 2019 should create a causal connection. But the workers' compensation claim had been pending since 2014, and Emerson offers no explanation or allegation in her complaint as to why the sheriff's office was okay with her workers' compensation claim. They were okay with her Title VII claim, but yet in 20—for five years, they were okay with her workers' compensation claim. And then all of a sudden, they were not okay with it, and Emerson offers no explanation or allegation in her complaint alleging motivation on behalf of the sheriff's office. Instead, for a plausible claim, Emerson would have to plead facts that something changed or that there was a reason that the sheriff's office would have been motivated by the fact that it was still pending in 2019. Well, for example, I'm looking at the Brooks case where we said that the pendency—the fact that the thing was continuing and had not reached a settlement or agreement or resolution was allowed an inference that the employer was just done, just sick of the matter. And she has alleged she got a notice with no reason whatsoever. And so the only two facts which she alleged are, I have a claim pending, and I also, by the way, had a Title VII appeal that I made them answer and deal with. So is it quite right to say that she has no facts there from which a reasonable inference can be drawn? Defendants admit that it is. She has not alleged, and she admits that there were no intervening events from the time that she was on leave since 2012. Now, the court—you bring up the Brooks case. In that case, this court did recognize that the plaintiff did state a claim of retaliation due to a pendent workers' compensation claim because the plaintiff had actually alleged facts, that the case was contentious, that they were working on settling it, that the settlements were not going well, and that the plaintiff in that Brooks case was—had extensive medical expenses. And those were all facts that the plaintiff pled. But here, Emerson pleads no details as to why she believes the sheriff's office would have been okay with her workers' compensation claim for five years and then not okay with it. So defendants believe that the Brooks case can't be distinguished. The—what concerns me a bit about the position that you espouse is that there is—Ms. Emerson would have no idea what prompted the decision, right, because there hasn't been any contact. Under federal law, you can't get early discovery, right, with regard to these issues. And so the—and so what is a plaintiff to do in that situation when all the information, right, is in the hands of the alleged party that's retaliating against her? And she has nothing other than the workers' compensation claim is pending and I'm fired. That's not enough to establish a workers' compensation retaliation claim. Courts have held that the simple fact that— So let's—hypothetically speaking, okay, completely hypothetical. So let's say that there is an internal memo at the—that the defendants have where one lawyer, you know, to one of the lawyers that's litigating the workers' comp claim. And the note says, you know what, don't worry about it. We're going to fire her anyway because we're sick of this, okay? She has no idea that that's taking place. She has no way to get that information. And so in that situation, what are we to make of that kind of information asymmetry between the parties? Well, it is a balancing act, I guess, as far as the plaintiff's right to discovery. But in this case, plaintiff has no possible facts that the sheriff's office was motivated by her workers' compensation claim. Unlike the Brooks case you're saying? Yes. And in order to allege a sustainable claim, she needs to allege some facts supporting causation. And otherwise, you know, Twombly requires that causation be shown above a speculative level. And here, plaintiff has only alleged speculation, even as far as—has only alleged speculative allegations, even as far as the motivation and knowledge of sheriff's office employees. It's just that arguably the silence, the seven-year silence, the five-year silence, can be read both ways. It could be they're fine with her being out, they're not bothered at all, so there's nothing at all suspicious about her being let go at year seven of the disability, year five of the workers' comp claim. Or the silence is, it means everything. That means it's the only thing that could possibly have triggered the firing, because it's the only thing that's been going on for five to seven years. And earlier you talked about for her to establish, but we have to be mindful of the stage of the case we're at. This is a motion to dismiss. She's not at summary judgment. I guess the pleading standards, though, of Twombly still require that she put out a valid, sustainable claim. And she's failed to do that with only her facts of that she fought, that she engaged in a protected activity, and then she later was terminated. And she has to be able to show more. The whole point of the Rule 12b-6 motion is that defendants don't have to engage in discovery on claims that are not sustainable. And here defendants maintain that her claim is not sustainable, and she has not presented enough evidence for a workers' compensation retaliation. So if she had added in her complaint a line that said, and this workers' compensation claim has been going on for five years, and they're clearly sick of her, period, would that be enough? I would submit no, because, again, it doesn't offer any motivation as far as, again, it just refers to the five years. It wouldn't offer any motivation as to the sheriff's office. I would say under Twombly, she would be required to plead more facts to establish a plausible claim as far as what happened. On that basis, here Emerson has failed to state a claim of workers' compensation retaliation. She offers no facts establishing causation. Unless the court has any other questions, defendants respectfully ask that the court affirm the district court's order dismissing plaintiff's complaint. Thank you, Ms. Harvey. Thank you. Mr. Greco, we'll give you two minutes. May it please the court. Implicit in counsel's argument is that the sheriff's office could inoculate themselves against retaliation claims simply by delaying the resolution of the workers' compensation long enough that they get outside of a safe harbor period for retaliation where it would be deemed plausible. So maybe don't go to hearing or don't settle within two or three years. If you want to retaliate, wait out the five years, and then it's going to be concluded that it's too temporally remote. I submit that this case is analogous to the Brooks case, and precisely because workers' compensation act cases are not generally especially contentious in the way that we might think of them as being. And five years of litigation implies some level of contentiousness. Your Honor also referred to the other litigation, the Title VII litigation that was pending between the parties that was concluded in 2018. But as far as the workers' compensation case itself goes, the pendency thereof we submit does imply a basis for retaliation that did get under the sheriff's office skin, figuratively speaking. Counsel, there's some information that you could have pled. The individual on the letter, as Judge Coleman pointed out, you could have looked at whether or not the sheriff's office had any reorganizations, said, hey, there's no other reason here. That's not in your complaint, is it? It is not in the complaint. Again, I believe I submit under Rule 11 I would have an obligation to have some nexus between the individual signing the termination letter and the workers' compensation case. I don't believe that that can be established without pre-motion discovery unless I had access to that individual, which I have not. Thank you. Thank you. Thank you. We'll take the case under advisement.